J-S39042-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| SHAHEED SPRINGS, | : | |
| | : | |
| Appellant | : | No. 2079 EDA 2013 |

Appeal from the Judgment of Sentence entered on May 16, 2013
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No. CP-51-CR-0006558-2012

BEFORE:  BOWES, OTT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED JULY 20, 2015**

Shaheed Springs ("Springs") appeals the judgment of sentence imposed following his conviction of carrying a firearm without a license and carrying a firearm on public streets and public places.[1]  We affirm.

The trial court set forth the relevant factual and procedural history in its Opinion, which we incorporate herein for purposes of this appeal.  ***See*** Trial Court Opinion, 8/27/14, at 1-3 (unnumbered).

On appeal, Springs raises the following question for our review:

> Did [] the [trial] court violate [Springs's] right to a fair trial by granting the prosecutor's mid-trial request to call a fingerprint expert, during its case-in-chief at [Springs's] retrial, which gave [Springs] no time to secure the presence of [his] fingerprint expert to testify at trial in rebuttal?

Brief for Appellant at 3.

---

[1] ***See*** 18 Pa.C.S.A. §§ 6106, 6108.

Springs contends that the trial court violated his rights to due process and a fair trial, as well as Pa.R.Crim.P. 573, by permitting the Commonwealth to call an expert witness in the middle of Springs's retrial, without granting Springs a continuance in order to secure the presence of a defense expert witness. Brief for Appellant at 12. Springs claims that, during his retrial, the prosecutor informed defense counsel, for the first time, that he would be calling a fingerprint expert, and that this "belated notice violated Rule 573, crippled [Springs's] defense in that he was unable to secure the presence of his own expert to rebut the Commonwealth's expert, and constituted a violation of due process." *Id*. at 12-13. Springs argues that the trial court should have, *sua sponte*, granted a recess or continuance of the trial, as a remedy for the Commonwealth's late notice that it would be presenting a fingerprint expert. *Id*. at 16-17.

Rule 573 of the Pennsylvania Rules of Criminal Procedure governs pretrial discovery in criminal cases and provides, in pertinent part, as follows:

>   (A) **Informal**. Before any disclosure or discovery can be sought under these rules by either party, counsel for the parties shall make a good faith effort to resolve all questions of discovery, and to provide information required or requested under these rules as to which there is no dispute. ***When there are items requested by one party*** which the other party has refused to disclose, the demanding party may make appropriate motion. Such motion shall be made within 14 days after arraignment, unless the time for filing is extended by the court. In such motion the party must set forth the fact that a good faith effort to discuss the requested material has taken place

and proved unsuccessful. Nothing in this provision shall delay the disclosure of any items agreed upon by the parties pending resolution of any motion for discovery.

(B) **Disclosure by the Commonwealth**.

\*\*\*

(1) *Mandatory.* In all court cases, **on request by the defendant**, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

\*\*\*

(e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth;

\*\*\*

(2) *Discretionary With the Court.*

\*\*\*

(b) If an expert whom the attorney for the Commonwealth intends to call in any proceeding has not prepared a report of examination or tests, the court, **upon motion**, may order that the expert prepare, and that the attorney for the Commonwealth disclose, a report stating the subject matter on which the expert is expected to testify; the substance of the facts to which the expert is expected to testify; and a summary of the expert's opinions and the grounds for each opinion.

Pa.R.Crim.P. 573 (emphasis supplied).

Pursuant to Rule 573, where no discovery has been requested, the Commonwealth is not required to inform a defendant prior to trial that it intends to call an expert as a witness. *See* Pa.R.Crim.P. 573(A); *see also* Pa.R.Crim.P. 573(B)(1). Although Rule 573(B)(2)(b) provides a mechanism whereby the trial court may order a Commonwealth expert to prepare a report and provide such report to the defense, any such order is discretionary, and the defendant is required to move the trial court for such discovery. *See* Pa.R.Crim.P. 573(B)(2)(b).

Our review of the record discloses no request by Springs, informal or formal, for discovery from the Commonwealth. Thus, the Commonwealth was not *requested* or *required* to notify Springs of its intent to call Officer Bill Trenwith ("Officer Trenwith"), a crime scene investigation expert, as an expert witness, prior to Springs's retrial.[2] *See* Pa.R.Crim.P. 573(A); *see also* Pa.R.Crim.P. 573(B)(1). Accordingly, Springs's claim that, pursuant Rule 573, he was *entitled* to notification regarding the Commonwealth's intent to call Officer Trenwith as an expert witness prior to Springs's retrial lacks merit.

Moreover, we discern no discovery violation with regard to Rule

---

[2] Officer Trenwith was not involved in the investigation of Springs's case, and did not testify in Springs's first trial.

- 4 -

573(B)(2)(b).[3] At the inception of Springs's retrial on January 25, 2013, the Commonwealth submitted its witness list, which identified Officer Trenwith as a trial witness. *See* N.T., 1/28/13, at 5-6. Although Officer Trenwith had not been listed as a trial witness for Springs's initial trial, Springs's counsel made no effort to determine the nature of Officer Trenwith's anticipated testimony. Four days later, on the morning of the second day of Springs's retrial, the Commonwealth met with Officer Trenwith, for the very first time, and thereafter notified Springs's counsel that it would be calling Officer Trenwith to provide expert testimony regarding the difficulty of obtaining fingerprints from guns. *See id*. at 4-6. Notably, Commonwealth witness Officer Gregory Welsh ("Officer Welsh"), a ballistics expert, had provided the same testimony, without objection, during Springs's initial trial.[4] *Id*. at 5, 7; *see also* N.T., 1/23/13, at 137-38.

In response to the Commonwealth's notification, Springs's counsel did not move the trial court for an order requiring Officer Trenwith to prepare an

---

[3] Springs relies on several cases which involve an actual discovery violation by the Commonwealth. However, because we conclude that no such discovery violation occurred in this case, we regard those cases as inapposite.

[4] During Springs's initial trial, Officer Welsh conceded that he was not a fingerprint expert, and attributed his knowledge regarding the difficulty of obtaining fingerprints from guns to his police colleagues. *See* N.T., 1/23/13, at 137.

expert report, pursuant to Rule 573(B)(2)(b).[5] Instead, Springs's counsel simply requested that the trial court preclude Officer Trenwith from offering *any* testimony at Springs's retrial. **See** N.T., 1/28/13, at 4. Because we discern no violation of Rule 573 by the Commonwealth, the trial court did not err or abuse its discretion by refusing to preclude Officer Trenwith from testifying.[6]

We similarly conclude that the trial court did not err by failing to, *sua sponte*, grant a continuance of Springs's retrial. Although Springs did not request a continuance, such a remedy would have been an option available to the trial court if there had, in fact, been a discovery violation. **See** Pa.R.Crim.P. 573(E). However, because we conclude that no discovery

---

[5] Nevertheless, the trial court offered to permit Springs's counsel to speak with Officer Trenwith "for as much time as you need" in order to discern the nature and substance of his anticipated testimony. **See** N.T., 1/28/13, at 4. However, Springs's counsel indicated that she had already spoken with Officer Trenwith that morning, and that speaking with him was "not the issue." **Id**.

[6] Even assuming, *arguendo*, that there had been a discovery violation involved in this matter, such a violation would not automatically entitle Springs to a new trial. Springs must also establish "that the introduction of the expert testimony caused him prejudice to the degree that it affected his trial strategy or likely affected the outcome of the proceedings." **Commonwealth v. Roles**, 2015 PA Super 115, *29 (Pa. Super. 2015). Here, Springs has shown no prejudice from Officer Trenwith's testimony, as he had been placed on notice of this issue during his first trial, when Officer Welsh provided the same testimony. **See** N.T., 1/23/13, at 137-38.

violation occurred, no continuance was warranted.[7]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/20/2015

---

[7] Nevertheless, in an effort to accommodate Springs, the trial court advised Springs's counsel that she could have additional time to speak with Officer Trenwith, prior to his testimony, and that she could have an additional day to "discuss [the issue] with whomever." N.T., 1/28/13, at 14. The trial court also advised Springs's counsel that she was free to call a rebuttal expert witness to rebut Officer Trenwith's anticipated testimony. **See** N.T., 1/29/13, at 5-7. The mere fact that the rebuttal expert that Springs's counsel preferred to use was unavailable, and Springs refused to call another rebuttal expert, does not entitle Springs to a continuance. **See id**. at 5 (wherein the trial court noted that "there are hundreds of witnesses out there. Your choice is to not call another witness.").

## IN THE COURT OF COMMON PLEAS
## FOR THE COUNTY OF PHILADELPHIA
## CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA   :

                      :    NO.:    CP-51-CR-0006558-2012

       v.

              CP-51-CR-0006558-2012 Comm. v. Springs, Shaheed
                           Opinion      Superior Court No.: **FILED**

**SHAHEED SPRINGS**                         2079 EDA 2013

                  7191494401                        AUG 27 2014

                  **OPINION**                Criminal Appeals Unit
                                      First Judicial District of PA

**ANHALT, J.**

Appellant in the above-captioned matter appeals his convictions on all charges alleging that the Court erred in allowing the Commonwealth's crime scene expert to testify and by reading back the testimony of a Commonwealth witness in response to a question by the jury during deliberations. This Court submits the following Opinion in accordance with the requirements of Pa.R.A.P. 1925(a). For the reasons set forth herein, the Court holds that the judgment should be affirmed.

## PROCEDURAL HISTORY

Appellant was initially tried by a jury on January 23, 2013 on charges of Carrying a Firearm Without a License and Carrying a Firearm on Public Streets and Public Places in Philadelphia in violation of Sections 6106 and 6108 of the Uniform Firearms Act. On January 24, 2013, this Court declared a mistrial after the jury was unable to reach a verdict. Appellant was retried by another jury on the same charges on January 25, 28 and 29, 2013. On January 29, 2013, the jury found Appellant guilty of all charges.

On May 12, 2013, this Court sentenced appellant to two and a half to seven years incarceration for violation of Section 6108 and to a consecutive term of five years probation for violation of Section 6106. Post-sentence motions were denied on July 9, 2013.

Appellant filed a Notice of Appeal was filed on July 22, 2013. Several extensions of time were granted to file a Pa.R.A.P. 1925(b) Statement of Matters Complained of on Appeal due to the fact that the notes of testimony had not been transcribed completely. A 1925(b) statement was finally filed on July 28, 2014 after all the notes were finally transcribed.

## FACTUAL HISTORY

On March 28, 2012, Philadelphia Police Officers Sean Rios and Steven Cieslinski were in uniform in a marked police vehicle when they received a radio call about a man with a gun and shot fired in the vicinity of 23rd and Susquehanna. When the officers arrived at that location approximately thirty seconds later, they observed a group of males, including Appellant, on the west side of 23rd Street. When the officers exited their patrol car, Appellant immediately started moving backwards away from the officers. He also failed to show his hands after the officers ordered everyone in the group to do so. Appellant then grabbed the right side of his waist like he was pulling or holding onto something concealed in his waistband and ran.

Officer Rios pursued Appellant on foot over walls and through alleyways, losing sight of him for no more than a second when Appellant turned a corner. During the chase, Officer Rios observed Appellant discard a firearm onto a grassy area of a rear yard of a house. As Officer Rios chased Appellant on foot, Officer Cieslinski got back in the police vehicle and pulled up at the end of the alleyway in which Appellant was running. When Appellant ran out, Officer Cieslinski grabbed him and attempted to handcuff him, but Appellant resisted by flailing his arms about. Officer Rios caught up and assisted in holding Appellant down.

By the time Appellant was secured, other officers had arrived on the scene. Officers Rios, Cieslinski and Toman immediately went back to the area where Officer Rios saw Appellant throw the gun. Once there, it took no more than a few minutes to find the firearm. Police later tested the gun and found it to be operable. It was loaded with live cartridges and had gunshot residue and lint in all six chambers. The gun was not examined for fingerprints or DNA evidence. Over Appellant's objection, Officer William Trenwith, a Philadelphia Police Officer from the Crime Scene Unit, testified that it is very difficult to obtain identifiable fingerprints or DNA samples from a gun.

## DISCUSSION

Appellant raises two issues on appeal. In his first issue, Appellant claims that it was error for this Court to permit Officer Trenwith to testify at trial as a crime scene expert on grounds that the witness's name was not provided to the defense until the night before trial, no expert report was provided, and the defense had no time to investigate the expert or provide a rebuttal witness in time for trial. In this claim, Appellant essentially contends that the Commonwealth failed to comply with Rule 573(B)(1)(e) of the Pennsylvania Rules of Criminal Procedure, which provides that in all court cases, the Commonwealth shall disclose "any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant that are within the possession or control of the attorney for the Commonwealth." This claim is without merit in view of the particular circumstances of this case.

"The purpose of the discovery rules is to permit the parties in a criminal matter to be prepared for trial; trial by ambush is contrary to the spirit and letter of those rules." *Commonwealth v. Fox*, 619 A.2d 327, 336-336 (Pa.Super. 1993), citing *Commonwealth v.*

*Moose*, 602 A.2d 1265, 1274 (1992). The goal of discovery is to "accord a defendant the opportunity to discover evidence which he did not know existed, as well as to seek possession of evidence of which he was aware." *Commonwealth v. Hussmann*, 485 A.2d 58, 61 (Pa.Super. 1984).

Here, Appellant was aware the Commonwealth would present testimony that fingerprints and DNA are very difficult to obtain from guns since, at Appellant's first trial, which ended in a mistrial just days earlier, the Commonwealth presented that very testimony via Officer Gregory Welsh, a ballistician who had examined the firearm discarded by Appellant. (N.T. 1-23-13, pp. 131-137). The only difference at the retrial was that the Commonwealth called a crime scene expert to testify to the same thing. Further, there was no expert report to provide the defense. Officer Trenwith was unfamiliar with the facts of Appellant's case, and was merely testifying concerning the general difficulty in lifting identifiable fingerprints or obtaining DNA samples from guns and ammunition to explain why such tests are often not performed on firearms. Finally, defense counsel admitted she had the opportunity to speak with Officer Trenwith the day before he was called as a witness. (N.T. 1-29-13, pp. 8-9). Defense counsel also could have asked for a continuance to investigate the testimony of Officer Trenwith and had the opportunity to call a rebuttal witness. Accordingly, Appellant was aware of the existence of this testimony and was adequately prepared for trial. *See, Commonwealth v. Fox, supra.*

In his second issue, Appellant contends that when the jury asked during deliberations whether Officer Rios said "he saw the defendant throw something" or said "he threw a gun", the Court's action of reading the officer's testimony "I could see him discard a firearm" was error. Appellant claims that by reading this testimony to the jury instead of allowing the jury's

recollection to control, an irrebuttable presumption as to the truth of that statement was created. This issue is also without merit.

"When a jury requests that recorded testimony be read to it to refresh its memory, it rests within the trial court's discretion to grant or deny such request." *Commonwealth v. Gladden*, 665 A.2d 1201, 1205 (Pa.Super. 1995)(en banc), appeal denied, 675 A.2d 1243 (Pa. 1996) (quoting *Commonwealth v. Johnson*, 618 A.2d 415, 418 (Pa.Super. 1992). A trial court's decision in this matter should not be reversed on appeal absent a flagrant abuse of discretion. *Gladden*, 665 A.2d at 1205. Here, where the jury's question involved an important aspect of the case, the Court believed it was in the interest of justice to read back Officer Rios' testimony to the jury. Officer Rios consistently stated throughout his entire testimony both on direct and cross examination that he saw the Appellant discard a firearm. Appellant does not allege that Officer Rios did not make the statement that the Court read back to the jury or that the Court mischaracterized his testimony. Moreover, this action did not create an irrebuttable presumption as to the truth of the officer's testimony as Appellant baldly contends. Rather, the reading back of the testimony simply served to refresh the jury's recollection as to what Officer Rios said about what he had observed. It was up to the jury to decide whether or not it found the officer's statement credible. Accordingly, the Court did not abuse its discretion here.

## CONCLUSION

For all the foregoing reasons, Appellant's judgment of sentence should be affirmed.

BY THE COURT: *Diana L. Anhalt*

---

DIANA ANHALT, J.

August 22, 2014