J-A30018-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RAHMIK BECKETT | |
| Appellant | No. 1864 EDA 2014 |

Appeal from the Judgment of Sentence May 16, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003562-2012

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RAHMIK BECKETT | |
| Appellant | No. 1865 EDA 2014 |

Appeal from the Judgment of Sentence May 16, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003564-2012

BEFORE:  MUNDY, J., JENKINS, J., and FITZGERALD, J.[*]

MEMORANDUM BY JENKINS, J.:                **FILED NOVEMBER 23, 2015**

Appellant Rahmik Beckett ("Appellant") appeals the judgment of sentence entered May 16, 2014 in the Philadelphia County Court of Common Pleas following his jury trial convictions for voluntary manslaughter,[1] assault

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2503.

of a law enforcement officer,[2] firearms not to be carried without a license,[3] and possession of an instrument of crime.[4] After careful review, we affirm.

On September 28, 2011, Appellant shot Kevin Jones ("Victim") eight times, killing him. As he fled, Appellant also fired multiple gunshots at pursuing police. As a result, on February 27, 2014, a jury convicted Appellant of the above-referenced crimes. On May 16, 2014, the trial court sentenced Appellant to an aggregate term of 20 to 40 years of incarceration.[5] Appellant filed a post-sentence motion, which the trial court denied on May 27, 2014. Appellant filed a notice of appeal on June 20, 2014.[6]

Appellant raises the following claims for review:

I. Did the lower court err by admitting evidence of Appellant's arrest for gun possession, which did not result in a conviction, when the fact of his arrest was not relevant and did not contradict any of his testimony?

_____

[2] 18 Pa.C.S. § 2702.1.

[3] 18 Pa.C.S. § 6106.

[4] 18 Pa.C.S. § 907.

[5] The trial court sentenced Appellant to 10 to 20 years of incarceration for the voluntary manslaughter conviction, 10 to 20 years of consecutive incarceration for the assault of a law enforcement officer conviction, 2½ to 5 years of concurrent incarceration for the firearms not to be carried without a license conviction, and 2½ to 5 years of concurrent incarceration for the possessing an instrument of crime conviction.

[6] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

II. Where the homicide file of Kyleem Spain clearly referenced the decedent from the instant case as a possible suspect, was it error to deny Appellant the opportunity to confront Detective Nathan Williams on cross-examination after Detective Williams denied any reference to Decedent in the file?

III. Did the lower court erroneously exclude portions of Decedent's Facebook account that were relevant to establish Appellant's legitimate fear of Decedent?

IV. Did the lower court err by prohibiting the jury from bringing a copy of Appellant's confession in its deliberations room pursuant to Pa.R.Crim.P. 646 where Appellant waived the protections under that rule and the Commonwealth agreed?

Appellant's Brief, p. 5.

Appellant's first three claims involve the trial court's evidentiary rulings. *See* Appellant's Brief, pp. 14-26. This Court has stated the well-established standard of review for admission of evidence claims as follows:

The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. Thus, [this Court's] standard of review is very narrow. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Commonwealth v. Lopez*, 57 A.3d 74, 81 (Pa.Super.2012).

In his first issue, Appellant claims the trial court erred by permitting the Commonwealth to introduce evidence regarding Appellant's prior gun possession arrest. *See* Appellant's Brief, pp. 14-18. He is incorrect.

The Judicial Code provides:

No person charged with any crime and called as a witness in his own behalf, shall be asked, or if asked, shall be required to

- 3 -

answer, any question tending to show that he has committed, or been charged with, or been convicted of any offense other than the one wherewith he shall then be charged, or tending to show that he has been of bad character or reputation unless:

(1) he shall have at such trial, personally or by counsel, asked questions of the witness for the prosecution with a view to establish his own good reputation or character, or has given evidence tending to prove his own good character or reputation; or

(2) he shall have testified at such trial against a co-defendant, charged with the same offense.

42 Pa.C.S. § 5918.  Accordingly, "[i]t is fundamental that a criminal defendant may not be questioned on cross-examination concerning an arrest which has not resulted in conviction when the purpose of that question is to impeach his character or to show a propensity to commit a crime." *Commonwealth v. Petrakovich*, 329 A.2d 844, 850 (Pa.1974).  However, if a defendant opens the door by delving into what would otherwise be objectionable questioning, the prosecution may probe into the objectionable area.  *Commonwealth v. Patosky*, 656 A.2d 499, 504 (Pa.Super.1995).

Here, on direct examination by defense counsel, Appellant testified that he had limited involvement with guns prior to August 2011 as follows:

[**Defense counsel**]:  Now let's move forward, getting up to September 26th or around there.

Did there come a time when you started to carry a gun?

[**Appellant**]:  Yes.

[**Defense counsel**]:  By come a time, I'm talking now in the time frame of February through September 28th of 2011.

Were there times when you carried a gun?

- 4 -

[**Appellant**]:  Yes.

[**Defense counsel**]:  Did that start around March and thereafter when you became aware of what Kevin Jones had supposedly done?

[**Appellant**]:  I started carrying a gun like around the end of July, August.

[**Defense counsel**]:  Were there other times when you were around guns?

[**Appellant**]:  Yes.

[**Defense counsel**]:  Or when you may have carried a gun for shorter periods of time?

[**Appellant**]:  Yes.

N.T. 2/24/2014, pp. 210-11.

On cross-examination, the Commonwealth sought to question Appellant about a gun possession arrest that occurred in April 2011, arguing that Appellant's testimony that he did not regularly carry a gun until August 2011 had opened the door on direct examination. *See* N.T. 2/25/2014, pp. 130-131.  The trial court agreed, stating:

> **THE COURT**:  I already ruled.  I'm allowing it.  It shows that he was specifically carrying a weapon on April 13, 2011, which would have been five months prior to this murder and [Appellant] indicated that he carried a weapon once in a while before that, I think, and then not until really August of '11 did he carry a weapon, I guess, on a daily basis.  So he talked about carrying a weapon.  It comes in.

N.T. 2/25/2014, p. 131.[7]  This was not an abuse of discretion.

_____

[7] In response to the Commonwealth's questioning about the prior gun possession arrest, Appellant explained to the jury that, while the gun was in
*(Footnote Continued Next Page)*

- 5 -

Additionally, the trial court explained that any error in allowing such cross-examination was harmless error:

> Even if the cross-examination of [Appellant] was error, such error was harmless. Questioning [Appellant] regarding his arrest posed no threat of prejudice to the defense, particularly after [Appellant] had already conceded to carrying a firearm. "Although a perfectly conducted trial is indeed the ideal objective of our judicial process, the defendant is not necessarily entitled to relief simply because of some imperfections in the trial, so long as he has been accorded a fair trial. 'A defendant is entitled to a fair trial but not a perfect one.'" [**Commonwealth**] **v. Martinolich**, 318 A.2d 680, 695 (Pa.1974) (citing [**Commonwealth**] **v. Hill**, 301 A.2d 587, 590 (Pa.1973)). Any prejudicial effect of the error, if any, was de minimus, merely cumulative, and could not have contributed to the verdict.

1925(a) Opinion, p. 16. We agree with the trial court's assessment.

Further, the trial court instructed the jury to consider this prior gun arrest evidence only to illustrate that Appellant was around a gun in April 2011, and not for any other purpose. We presume the jury followed the court's instruction and limited its consideration of the disputed evidence. **See Commonwealth v. Robinson**, 864 A.2d 460, 514 (Pa.2004); **see also Commonwealth v. Baker**, 614 A.2d 663, 672 (Pa.1992) ("The presumption in our law is that the jury has followed instructions [of the trial court]").

Next, Appellant contends the trial court erred by not allowing Appellant to impeach Detective Nathan Williams with the activity sheets in the

_(Footnote Continued)_ ———————————

the vehicle he was driving, it was not on his person and there were two other individuals in the vehicle as well. **See** N.T. 2/25/2014, pp. 134-135.

investigation file of another murder. *See* Appellant's Brief, pp. 18-21. We do not agree.

"The general rule is that a prior inconsistent statement of a declarant is admissible to impeach the declarant." *Commonwealth v. Henkel*, 938 A.2d 433, 442 (Pa.Super.2007) (citing *Commonwealth v. Brady*, 507 A.2d 66, 68 (Pa.1986)). Additionally, a witness may be impeached with hearsay where the hearsay "is a writing signed and adopted by the declarant." Pa.R.E. 803.1(1)(B). However, a party may not impeach a witness with the statement of another. *Commonwealth v. Woods*, 710 A.2d 626, 630 (Pa.Super.1998) ("it must be established that the witness, in fact, made the allegedly inconsistent statement.")

Here, Appellant sought to impeach Detective Williams with an activity sheet from the file of a separate case that involved the murder of Kyleem Spain, Appellant's friend whom Appellant believed the victim in the instant matter had killed. *See* N.T. 2/21/2014, pp. 49-53. Detective Williams did not work on the Spain murder investigation. Further, the detective did not prepare, sign, or adopt the activity sheet. In fact, the detective disclaimed any knowledge of the activity sheet from the Spain murder investigation. *See id.* at 51-52. Therefore, Appellant could not have properly impeached

Detective Williams with the Spain murder activity sheet,[8] and the trial court did not err by not allowing Appellant to cross-examine him with it.

In his third issue, Appellant claims the trial court erred by excluding two of the victim's Facebook posts because they were relevant to Appellant's state of mind at the time he shot the victim. *See* Appellant's Brief, pp. 22-26. He is incorrect.

The first of the victim's Facebook posts expresses sympathy for a list of notorious serial killers:

> R.I.P. Ted Bundy, Jon Gacy, Jim Jonez, Timothy Mcveigh, Son of Sam. Da Trenchcoat Mafia, which is the Columbine killers. All of our brotherz on their Ji'had. N all of da otha professionalz dat took their work seriously.

N.T. 2/19/2014, p. 46. The trial court determined this post was not an expression of an intent to commit violence or have others commit violence, and therefore excluded the post as irrelevant. *Id.* at 47.

The second excluded post read: "blow a nigga brains out just to see what he thinking about". N.T. 2/19/2014, p. 54. The trial court also excluded this post as irrelevant, explaining:

> That's out. It's like some poetry he is writing. It actually rhymes. No. It means nothing.

---

[8] As the trial court points out, Appellant could have introduced the activity sheet from the Spain murder by calling one of the detectives who actually worked on that investigation to testify about its contents, but he did not. **See** 1925(a) Opinion, p. 18.

N.T. 2/19/2014, p. 55.

The trial court properly excluded the Facebook posts as irrelevant and non-probative.[9]  The court did not abuse its discretion in making these evidentiary determinations.

In his fourth claim, Appellant maintains that the trial court erred by not allowing a copy of Appellant's confession to go back with the jury during deliberations.  **See** Appellant's Brief, pp. 26-28.  Again, Appellant is incorrect.

Ordinarily, "[w]hether an exhibit should be allowed to go out with the jury during its deliberation is within the sound discretion of the trial judge." **Commonwealth v. Barnett**, 50 A.3d 176, 194 (Pa.Super.2012); Pa.R.Crim.P. 646(A); **see also Commonwealth v. Bango**, 685 A.2d 564 (Pa.Super.1996) *aff'd*, 742 A.2d 1070 (Pa.1999).  This discretion, however, is not absolute.  Pennsylvania Rule of Criminal Procedure 646 provides as follows:

> **Rule 646. Material Permitted in Possession of the Jury**
>
> (A) Upon retiring, the jury may take with it such exhibits as the trial judge deems proper, except as provided in paragraph (C).
>
> *****
>
> (C) During deliberations, the jury **shall not be permitted to have**:

---

[9] We note that the trial court ruled relevant and allowed Appellant to testify extensively at trial about numerous other posts from the victim's Facebook account.  **See** N.T. 2/24/2014, pp. 141-187.

(1) a transcript of any trial testimony;

(2) *a copy of any written or otherwise recorded confession by the defendant*;

(3) a copy of the information or indictment; and

(4) except as provided in paragraph (B), written jury instructions.

Pa.R.Crim.P. 646 (emphasis provided). This unambiguous rule expressly forbids juries from having certain enumerated categories of exhibits during deliberations, including defendant confessions.

As our Supreme Court has explained:

The underlying reason for excluding certain items from the jury's deliberations is to prevent placing undue emphasis or credibility on the material, and de-emphasizing or discrediting other items not in the room with the jury. If there is a likelihood the importance of the evidence will be skewed, prejudice may be found; if not, there is no prejudice *per se* and the error is harmless.

*Commonwealth v. Strong*, 836 A.2d 884, 888 (Pa.2003); *see also Commonwealth v. Morton*, 774 A.2d 750, 753 (Pa.Super.2001) (decided under Pa.R.Crim.P. 646's predecessor, Pa.R.Crim.P. 1114) ("The case law is clear that the overriding concern of Rule [646]'s prohibition against written confessions going out with the jury is that the physical presence of the confession within the jury room may cause it to be emphasized over other evidence in the form of testimony heard from the witness stand."). As a result, this Court has repeatedly held that a trial court commits reversible error by permitting a jury to have a defendant's confession during deliberations. *See Commonwealth v. Young*, 767 A.2d 1072, 1076

(Pa.Super.2001) (jury may not have defendant's confession during deliberations); *see also Barnett*, *supra* (reversal where trial court violated Rule 646 by allowing jury to have a note that was the functional equivalent of a confession). In response to a jury request to have the confession, however, a trial court may allow the jury to review the confession in court. *See Commonwealth v. Morton*, 774 A.2d 750, 753 (Pa.Super.2001) (no error in trial court refusing to allow written confession to go out with jury, but permitting jury to review written confession in jury box, which court analogized to re-reading a portion of the transcript to the jury).

Here, in compliance with Pa.R.Crim.P. 646, the trial court refused to send Appellant's confession back with the jury during deliberations. Instead, the court brought the jury back into the courtroom and read the confession while the jurors reviewed a copy of it displayed on a screen. This procedure, analogous to re-reading a portion of the transcript to the jury, was correct and permitted within the sound discretion of the trial court.[10] *See Morton*, *supra*. Accordingly, Appellant's fourth claim fails.

Judgment of sentence affirmed.

---

[10] The fact that both Appellant and the Commonwealth agreed to allow the confession to go back with the jury is immaterial. Rule 646 is express and unambiguous in prohibiting confessions to go back with the jury during deliberations. *See* Pa.R.Crim.P. 646(C)(2). This prohibition is not subject to waiver, regardless of the parties' agreement.

J-A30018-15

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/23/2015